FRIEDMAN, JAMES & BUCHSBAUM LLP
Andrew V. Buchsbaum (AB-6475)
Attorneys for Plaintiff
132 Nassau St., Suite 900
New York, NY   10038
(212) 233-9385

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
---------------------------------------------------------------x
ERNEST W. HINSON, Jr,                                Civil Action No:
                                                     :   18-CV-870-BRM-LHG
                Plaintiff,
                                                     :
    -against-
                                                     :
UNITED STATES OF AMERICA,
                                                     :
                Defendant.
---------------------------------------------------------------x

## PLAINTIFF'S TRIAL BRIEF

# Table of Contents

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ii

I.     The Relevant Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

       A.    Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

       B.    Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

              1.    Injuries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

              2.    Wage and Benefit Loss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

              3.    Pain and Suffering–past and future . . . . . . . . . . . . . . . . . . . . . . .   5

              4.    Prejudgment Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

II.    Legal Positions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

       A.    General Principles . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

       B.    Liability principles under the Jones Act and
            warranty of seaworthiness differ greatly from land-based analysis . . . .   7

              1.    The Warranty of Seaworthiness . . . . . . . . . . . . . . . . . . . . . . . . .   7

              2.    The Jones Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

       C.    The failure to properly mark the subject coaming renders
            the Vessel unseaworthy and defendant liable under
            the Jones Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

       D.    Inspections by the United States Coast Guard and approval
            of the ship's design by the American Bureau of Shipping
            do not prove that the subject doorway was seaworthy
            when Hinson was injured . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

**Table of Authorities**

**Cases**

Adams v. United States, 64 F. Supp.2d 647 (S.D. Tex. 1999) . . . . . . . . . . . . . . . . . . . . . . .   5

Ali v. Rogers, 780 F.3d 1229 (9th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

American Dredging Co. v. Miller, 510 U.S. 443 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

The Arizona v. Anelich, 298 U.S.110 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

Barry v. United States, No. 11–847, 2013 WL 1320759
(N.D. Cal. April 1, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

Bentley v. Albatross S.S. Co., 203 F.2d 270 (3d Cir. 1953) . . . . . . . . . . . . . . . . . . . . . . . .   8

Brogan v. United New York Sandy Hook Pilots' Ass'n,,
213 F. Supp.2d 432, 436 (D.N.J. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

Cassens v. St. Louis River Cruise Lines, 44 F.3d 508 (7th Cir. 1995) . . . . . . . . . . . . .   13, 14

Costa v. Compagnie Generale Maritime et Financiere, 78 F.3d 592 (9th Cir. 1996),
cert. denied, 517 U.S. 1245 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

Cruz v. Marine Transport Lines, 634 F. Supp. 107 (D.N.J. ),
aff'd without op., 806 F.2d 252 (3d Cir.  1986),
cert. denied, 481 U.S. 1048 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

CSX Transp. v. McBride, 564 U.S. 685 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

Diehl v. Blaw-Knox, 360 F.3d 426 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

The Dutra Group v. Batterton, __ U.S. ___, 139 S.Ct. 2275 (2019) . . . . . . . . . . . . . . .   7, 9

Enna v. Crescent Towing and Salvage, Co., No. 01-856,
2002 WL 1933725 (E.D. La. Aug. 19, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

Evans v. United Arab Shipping Co., 4 F.3d 207 (3d Cir.1993), cert. denied,
510 U.S. 1116 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

Fasold v. Delaware River & Bay Auth., 117 F. App'x 836,
2004 WL 2943974 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9, 10

Fitzgerald v. United States Lines, 374 U.S. 16 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

Gutierrez v. Waterman S.S. Corp., 373 U.S. 206, 213 (1963) . . . . . . . . . . . . . . . . . . . . . . 11

Howard v. A.L. Burbank & Co., 202 F. Supp. 8 (E.D.a Va. 1958) . . . . . . . . . . . . . . . . . 8

Jackson v. OMI Corp., 245 F.3d 525 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Johnson v. Offshore Express, Inc., 845 F.2d 1347 (5th Cir. 1988). . . . . . . . . . . . . . . 10, 11

Jones v. United States, 326 F. Supp.3d 262 (E.D. La. 2018), aff'd,
936 F.3d 318 (5th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Jussila v. M/T Louisiana Brimstone, 691 F.2d 217 (5th Cir. 1982) . . . . . . . . . . . . . . . . 11

Kiger v. Doucet & Adams, Inc., No. 96-1915, 1998 WL 249221
(E.D. La. May 15, 1998), aff'd, 209 F.3d 719 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . 11

Kuithe v. Gulf Caribe Maritime, Inc., No. 08-0458, 2010 WL 3419998
(S.D. Ala. Aug. 26, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438 (2001) . . . . . . . . . . . . . . . . . . . . . . . 7

Martinez v. United States, 705 F.2d 658 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . 8

Michel v. Jade Marine, Inc., No. 07-7543, 2008 WL 5382255
(E.D. La. Dec. 22, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Mitchell v. Trawler Racer, Inc., 362 U.S. 539 (1960) . . . . . . . . . . . . . . . . . . . . . . 7, 8, 11

Moore v. United States, 817 F. Supp.2d 1136 (N. D. Cal. 2011) . . . . . . . . . . . . . . . . . 6, 7

Murphy v. Overlakes Freight Corp., 177 F.2d 342 (2d Cir. 1949),
cert. denied, 339 U.S. 913 (1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

O'Connell v. Interocean Mgmt. Corp., 90 F.3d 82 (3d Cir. 1996) . . . . . . . . . . . . . . . . . . 5

Oxley v. City of New York, 923 F.2d 22 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Pope & Talbot, Inc. v. Hawn, 346 U.S. 406 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Ribitzki v. Canmar Reading & Bates, Ltd..111 F.3d 658 (9th Cir. 1997) . . . . . . . . . . . . 10

Rivera v. Kirby Corp., No. 17-CV-111, 2019 WL 4051854
(S.D. Tex. Aug. 28, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Sabine Towing Co. v. Brennan, 72 F.2d 490 (5th Cir.), cert. denied,
293 U.S. 611 (1934) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Seas Shipping Co. v. Sieracki, 328 U.S. 85 (1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

Sias v. Quality Eng'g Servs., No. 15-CV-2223, 2018 WL 4039394
(W.D. La. Aug. 23, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

Socony–Vacuum Oil v. Smith, 305 U.S. 424 (1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

Sousa v. M/V Caribia, 360 F. Supp. 971 (D. Mass. 1973) . . . . . . . . . . . . . . . . . . . . . . . .   11

In re United States, 367 F.2d 505 (3d Cir. 1966),
cert. denied sub nom Black v. United States, 386 U.S. 932 (1967) . . . . . . . . . . . . . . . . .   5, 6

Welch v. J. Ray McDermott & Co., 336 F. Supp. 383 (W.D. La. 1972) . . . . . . . . . . . . . .   8

Wills v. Amerada Hess Corp., 379 F.3d 32 (2d Cir. 2004),
cert. denied, 546 U.S. 822 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9, 10

**Statutes, Rules & Regulations**

45 U.S.C. § 51 (Federal Employer's Liability Act) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9, 10

46 U.S.C. §§ 30104 (the Jones Act) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

46 U.S.C. § 30903 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

46 U.S.C. §§ 30901-30918 (formerly codified at 46 U.S.C. § 741, *et seq*.)
(Suits in Admiralty Act) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

50 U.S.C. § 4701 (formerly codified at 50 U.S.C.A. § 1291) (Clarification Act) . . . . . . .   5

46 CFR Subpart 2.01 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

46 CFR Part 327 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

**Other Sources**

Robert Force & Martin J. Norris, 2 The Law of Seamen § 30:94 (5th ed. 2017) . . . . . . .   6

This Trial Brief is submitted by plaintiff Ernest W. Hinson, Jr.  This is a **bench trial**.[1]

## I.     The Relevant Facts:

### A.     Liability:

On May 24, 2016, plaintiff Ernest Hinson (dob: 10/12/1953), a member of the American Maritime Officers Union, was employed by Tote Marine Services, Inc. as Second Assistant Engineer aboard the SS [steamship] "Antares," a vessel owned by the United States Maritime Administration (MARAD) as part of the government's ready reserve fleet, which consists of non-combat vessels used to support distribution of combat material.  The "Antares" and her sister ship the SS "Denebola," also owned by MARAD, were moored alongside each other at the North Locust Point Marine Terminal, Baltimore, Maryland.  Both the "Antares" and the "Denebola" were managed and crewed pursuant to contract between the government and Tote Marine Services, a private company.

Hinson was ordered to board the "Denebola" to assist in 'lighting off' the "Denebola's" steam propulsion unit– *i.e.* readying the vessel's steam propulsion unit for service.  While in the service room of the "Denebola's" machinery space searching for chemicals to test the steam system water, an alarm sounded in the adjacent service room of the ship's machinery space.  As Hinson began to exit from the service room to investigate the source of the sounding alarm, he tripped over the raised coaming or sill between the service room and the machinery space, falling forward and injuring his right (dominant) arm. The accident was immediately reported.

A picture of the coaming as it existed at the time of incident follows:

---

[1] Although seaman's personal injury cases are usually jury trials (see Fitzgerald v. United States Lines, 374 U.S. 16 (1963)), 46 U.S.C. § 30903 states that admiralty actions against the United States "shall be tried without a jury."



Plaintiff contends that [t]he paint scheme on the coaming was visually misleading, indicating that the coaming was about 1--3/4 high whereas the actual height was 6-1/4;. and that "[t]he paint scheme on the interior, exit side coaming of the service room utilized two colors of paint (white and red/brown), but had been applied in a visually misleading manner, leading to a much lower implied height of the coaming. Plaintiff further contends that the visually misleading paint scheme was contrary to all reasonably applicable standards and contrary to custom and practice in the industry, which call for black and yellow alternating vertical stripes.

Within days *after* Mr. Hinson's accident, the coaming and surrounding deck area were painted yellow to distinguish the raised coaming from the deck, as follows:[2]

---

[2] Also, defendant's maritime expert will rely upon the yellow-painted lip on the "Antares," which plaintiff will contend proves feasability of yellow paint on the sill and may be relevant regarding plaintiff's comparative fault.



Although at first blush the subsequent yellow re-painting of the "Denebola's" sill may appear to be excludable as a subsequent remedial measure (see FRE 407), defendant has not objected to admissibility of the photo depicting the re-painting. See Pre-Trial Order, plaintiff's Exhibit 3. Additionally, the yellow re-painting was performed by employees of a non-party, Tote Marine Services, Inc. As such, the policy underlying FRE 407 "is not implicated where the evidence concerns remedial measures taken by an individual or entity that is not a party to the lawsuit." Diehl v. Blaw-Knox, 360 F.3d 426 (3d Cir. 2004). Alternatively, the "Statement of Person Claiming Injury" (plaintiff's Exhibit 12), in response to the pre-printed "Was the condition of any of the following a factor involved at the time . . . work area, deck? was written: "Deck area. **There was no safety yellow on the lip**," which is not a subsequent remedial measure (emphasis added).

B.     **Damages:**

1.     **Injuries:** It is undisputed that Hinson sustained a complete rupture of his right (dominant) triceps tendon. On August 3, 2016, he underwent open surgical triceps repair with implantation of suture anchors. He attended physical therapy from September 13, 2016 thru January 12, 2018. Despite extensive rehabilitation, on October 23, 2018, his treating orthopedic surgeon, Dr. Michael Sclafani, declared Hinson permanently unfit to return to sea duty. Dr. Sclafani has stated that Hinson is unable to lift more than 10 pounds with his injured arm. Defendant's independent medical examiner, Dr. Thomas K. Bill, has stated that Hinson is unable to use a wrench, a key component of his seafaring engineering job. Hinson has been awarded social security disability benefits as a result of these injuries. He would be unable to pass the Coast Guard physical exam, which requires, *inter alia*, lifting of 40 pounds and "without assistance, pull an uncharged 1.5 inch diameter, 50' fire hose with nozzle to full extension, and to lift a charged 1.5 inch diameter fire hose to fighting position."

2.     **Wage and Benefit Loss:** Mr. Hinson (a GED high school graduate and consistently employed Coast Guard-licensed seaman since 1976), testified that he intended to work until he died. Plaintiff's economist, Kristin K. Kucsma, has opined that Mr. Hinson's wage and union benefit loss range between **$538,654** and **$584,368** after taxes, taking into account any mitigation earnings and assuming work-life expectancy of 4.81 years.

Defendant's economist, John Wills, C.P.A., has opined that plaintiff's wage and benefit loss is either **$347,303** (assuming Mr. Hinson was unable to work for 1 year following the accident and then return to a sedentary occupation) or **$80,923** (a completely unsupported nonsensical assertion assuming Mr. Hinson would/could resume his prior seafaring occupation

within 1 year from the accident).[3]

   3. **Pain and Suffering-past and future:** Mr. Hinson continues to suffer pain, restricted range of motion and weakness in his right dominant arm. As of the injury date (May 24, 2016), males of Mr. Hinson's age (62.61 years) have an average life expectancy of an additional 19.8 years to 82.41 years of age, as per National Vital Statistics Reports, Volume 66, No. 4, United States Life Tables, 2014, Table 2, August 14, 2017.

   4. **Prejudgment Interest:**  It is unclear whether plaintiff is entitled to prejudgment interest in the event of recovery against the United States in this matter. See Adams v. United States, 64 F. Supp.2d 647 (S.D. Tex. 1999); 46 U.S.C.A. § 31107.

**II.** **Legal Positions:**

 **A.** **General Principles:**

   Defendant United States owned the SS "Denebola." See Complaint ¶ 4; Answer ¶ 4. Even though the vessel was operated and managed by Tote Marine Services, a seaman's action involving a vessel owned by the United States must be brought pursuant to the Clarification Act, 50 U.S.C. § 4701 (formerly codified at 50 U.S.C.A. § 1291), which incorporates the Suits in Admiralty Act, 46 U.S.C. §§ 30901-30918 (formerly codified at 46 U.S.C. § 741, *et seq*.) (the "SIAA"). See, e.g., O'Connell v. Interocean Mgmt. Corp., 90 F.3d 82, 85 (3d Cir. 1996); In re United States, 367 F.2d 505, 511 (3d Cir. 1966), cert. denied sub nom Black v. United States, 386 U.S. 932 (1967) ("For these reasons we have concluded that, by force of the exclusive liability clause of [SIAA] section 745, any right to recovery against the United States here for injury caused by its public vessel precludes recovery for the same injury

---

[3]Plaintiff makes no claim for medical expenses, all of which have been paid pursuant to defendant's maintenance and cure obligations, an obligation peculiar to maritime law. See, e.g., Fitzgerald v. United States Lines, 374 U.S. 16 (1963).

against the contract operator whose conduct was the immediate cause of the accident."); Cruz v. Marine Transport Lines, 634 F. Supp. 107 (D.N.J. ), aff'd without op., 806 F.2d 252 (3d Cir. 1986), cert. denied, 481 U.S. 1048 (1987).[4]

The Suits in Admiralty Act waives sovereign immunity for the United States in cases where 'a civil action in admiralty could be maintained' against a private person in the same situation." Ali v. Rogers, 780 F.3d 1229, 1233 (9th Cir. 2015) (quoting 46 U.S.C. § 30903(a)).

A claim by a seaman brought pursuant to the SIAA is analyzed under the Jones Act and general maritime law warranty of seaworthiness standards. The parties agree that Jones Act and seaworthiness principles govern here. See Pre-Trial Order, ECF No. 22 at §§ 1, 11, 12. See also In re United States, 367 F.2d 505, 512 (3d Cir. 1966), cert. denied sub nom Black v. United States, 386 U.S. 932 (1967) ("The logical implication of this statutory designation of the party to be held responsible is to impose liability on the United States in Jones Act cases whether it or its operating agent is conceptually the seaman's employer."); Jones v. United States, 326 F. Supp.3d 262 (E.D. La. 2018), ), aff'd, 936 F.3d 318 (5th Cir. 2019) (citing Robert Force & Martin J. Norris, 2 The Law of Seamen § 30:94 (5th ed. 2017)); Barry v. United States, No. 11–00847, 2013 WL 1320759 (N.D. Cal. April 1, 2013); Moore v. United States, 817 F.

---

[4]Other procedural quirks govern a seaman's action against the United States: such actions are subject to a two-year statute of limitations as opposed to the customary three year prescription (see 46 U.S.C.A. § 30905); they are tried non-jury; and actions involving Marad-operated vessels as here require a pre-suit administrative claim against Marad and the vessel operator pursuant to 46 CFR Part 327. Defendant admits that plaintiff has satisfied the pre-suit administrative requirements. See Pre-Trial Order, ECF No. 22, § 3 ("Stipulation of Facts") at ¶ 6 ("Hinson has complied with all statutory and regulatory conditions precedent before filing this action, including the timely filing of a claim with the Maritime Administration, Department of Transportation and Tote Services, Inc. pursuant to 46 C.F.R. Part 327 and as provided for in 46 C.F.R. Part 327.5.").

Supp.2d 1136 (N. D. Cal. 2011).

> **B.  Liability principles under the Jones Act and warranty of seaworthiness differ greatly from land-based analysis:**

As a seaman, Mr. Hinson is entitled to the liberal protections of the Jones Act, 46 U.S.C. §§ 30104 *et seq*. and the liability without fault principles of the warranty of seaworthiness. Principles of comparative negligence apply, and assumption of risk is not a defense. See, e.g., Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 424 (1953); Socony–Vacuum Oil v. Smith, 305 U.S. 424, 428 (1939).

> **1.  The Warranty of Seaworthiness:**

A shipowner's liability for failure to furnish a seaworthy vessel is a species of liability without fault and is not limited by conceptions of negligence. That is, seaworthiness is "essentially a species of liability without fault . . . neither limited by conceptions of negligence nor contractual in character. It is a form of absolute duty owing to all within the range of its humanitarian policy." Seas Shipping Co. v. Sieracki, 328 U.S. 85, 94–95 (1946) (citations omitted). Moreover, "the decisions of this Court have undeviatingly reflected an understanding that the owner's duty to furnish a seaworthy ship is absolute and completely independent of his duty under the Jones Act to exercise reasonable care." Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 549 (1960) (cited in The Dutra Group v. Batterton, __ U.S. ___, 139 S.Ct. 2275, 2285 (2019)). Under general maritime law, unseaworthiness is a claim "based on the vessel owner's duty to ensure the vessel is reasonably fit to be at sea." Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 441 (2001). Strict liability attaches to a shipowner for injuries caused by the vessel's unseaworthy condition. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 549 (1960). While a shipowner is not "obligated to furnish an accident-free ship," the ship owner does have a duty to "to furnish a vessel and appurtenances reasonably fit for their

–7–

intended use." Id. at 550. "Liability for unseaworthiness does not depend either on negligence, or on notice." Martinez v. United States, 705 F.2d 658, 660 (2d Cir. 1983) (citations omitted). To prevail on a claim of unseaworthiness, a plaintiff must establish that a vessel was insufficiently or defectively equipped, and that his or her injuries resulted from the unseaworthy condition of the vessel. Oxley v. City of New York, 923 F.2d 22, 26 (2d Cir. 1991).

That is, if an unseaworthy condition is present which is a proximate cause of a seaman's injury, then the exercise of due diligence or of reasonable care does not relieve the shipowner of its obligation. Mitchell v. Trawler Racer, Inc., 362 U.S. 539 (1960).

Thus, myriad conditions have formed the basis for an unseaworthy vessel. See, e.g., Howard v. A.L. Burbank & Co., 202 F. Supp. 8 (E.D.a Va. 1958) (bunk with safety rail not in proper place made vessel unseaworthy); Welch v. J. Ray McDermott & Co., 336 F. Supp. 383 (W.D. La. 1972) (shower floor without a mat, vessel unseaworthy); Bentley v. Albatross S.S. Co., 203 F.2d 270 (3d Cir. 1953) (absence of covers or guards about radiators located close to chairs in recreation quarters on vessel created an unseaworthy condition).

### 2. The Jones Act:

The Supreme Court has repeatedly held that the Jones Act is to be liberally construed in order to accomplish its beneficent purposes:

> The legislation [The Jones Act] was remedial, for the benefit and protection of seamen who are peculiarly the wards of admiralty. Its purpose was to enlarge that protection, not to narrow it. Its provisions, like others of the Merchant Marine Act, of which it is a part, are to be liberally construed to attain that end, and are to be interpreted in harmony with the established doctrine of maritime law of which it is an integral part.

The Arizona v. Anelich, 298 U.S.110 (1936).

Under well-established principles, courts have refused to give the word "negligence" a narrow, technical and restricted meaning under the Jones Act. Thus, the Jones Act, which incorporates the Federal Employer's Liability Act, 45 U.S.C. § 51 ("FELA"), makes the employer liable to its employees for an injury "resulting *in whole or in part* from the negligence of any of the officers, agents, or employees of such carrier." 45 U.S.C. § 51 (emphasis and italics added); see Wills v. Amerada Hess Corp., 379 F.3d 32, 36 n. 8 (2d Cir. 2004), cert. denied, 546 U.S. 822 (2005) ("The Jones Act incorporates FELA by reference. Under both statutes, the plaintiff bears a reduced burden of proof with respect to causation."); American Dredging Co. v. Miller, 510 U.S. 443, 456 (1994) ("Accordingly, we have held that the Jones Act adopts 'the entire judicially developed doctrine of liability' under the Federal Employers' Liability Act (FELA) . . . .").

As compared to a common law negligence actions, the standard of proof for causation when asserting negligence under the Jones Act is relaxed, sometimes termed "featherweight." See Evans v. United Arab Shipping Co., 4 F.3d 207, 210 (3d Cir.1993), cert. denied, 510 U.S. 1116 (1994) .

In CSX Transp. v. McBride, 564 U.S. 685 (2011), the Supreme Court re-affirmed the liberal negligence standard under the Jones Act, holding that liability is established if "[d]efendant's negligence played a part—no matter how small—in bringing about the injury."[5]

---

[5]McBride was decided pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq, ("FELA"), which governs actions by injured railroad workers. The Jones Act specifically provides that "[l]aws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section [the Jones Act]." 46 U.S.C. § 30104. See also The Dutra Group v. Batterton, __ U.S. __, 139 S.Ct. 2275, 2281 (2019) ("Rather than create a new structure of substantive rights, the Jones Act incorporated the rights provided to railway workers under the Federal Employers' Liability Act . . . ."); American Dredging Co. v. Miller, 510 U.S. 443, 456 (1994) ("Accordingly, we have held that the Jones Act adopts "the entire judicially

–9–

Thus, keeping the foregoing in mind, the elements of a Jones Act negligence claim are: duty, breach of duty, notice and causation. A vessel owner owes a seaman a duty under the Jones Act to provide a safe place to work. See, e.g., Brogan v. United New York Sandy Hook Pilots' Ass'n, 213 F. Supp.2d 432, 436 (D.N.J. 2002). Constructive notice satisfies the Jones Act, - i.e. that defendant "in the exercise of reasonable care . . . ought to have known about or discovered the alleged dangerous conditions . . . ." Ribitzki v. Canmar Reading & Bates, Ltd..111 F.3d 658 (9th Cir. 1997) (cited in Brogan, supra).

C. **The failure to properly mark the subject coaming renders the vessel unseaworthy and defendant liable under the Jones Act:**

The dangerous and defective condition of the coaming- creating optical confusion based on the confusing color pattern, renders the vessel unseaworthy. This is especially so given the fact that the coaming was re-painted shortly after plaintiff's accident.

In Rivera v. Kirby Corp., No. 17-CV-111, 2019 WL 4051854 (S.D. Tex. Aug. 28, 2019), "[t]he edges of the hatch cover were not marked and were not painted in a color contrasting the color of the deck." Id. at * 2. Plaintiff Rivera tripped over the 1 1/2 inch raised edge and was injured. Id. In finding the vessel unseaworthy, the Rivera court stated:

> Captain Rivera's unseaworthiness claim is meritorious. A shipowner has an absolute duty to provide a seaworthy vessel. Johnson v. Offshore Express, Inc., 845 F.2d 1347, 1354 (5th Cir. 1988). "[T]he seaworthiness doctrine ... is in essence that things about a ship, whether the hull, the decks, the machinery, the tools furnished, the stowage, or the

---

developed doctrine of liability" under the Federal Employers' Liability Act (FELA) . . . .; Fasold v. Delaware River & Bay Auth., 117 F. App'x 836, 2004 WL 2943974 (3d Cir. 2004) ("The Jones Act provides for recovery by a seaman or woman for personal injuries suffered in the course of his or her employment in an action at law; it extends to seamen and women the same rights accorded railway workers under the Federal Employers Liability Act ("FELA")); Wills v. Amerada Hess Corp., 379 F.3d 32, 36 n. 8 (2d Cir. 2004), cert. denied, 546 U.S. 822 (2005) ("The Jones Act incorporates FELA by reference. Under both statutes, the plaintiff bears a reduced burden of proof with respect to causation.").

-10-

cargo containers, must be reasonably fit for the purpose for which they are to be used." Gutierrez v. Waterman S.S. Corp., 373 U.S. 206, 213 (1963). To prevail on an unseaworthiness cause of action, then, the plaintiff must prove that the shipowner "has failed to provide a vessel, including her equipment and crew, which is reasonably fit and safe for the purposes for which it is to be used." Jackson v. OMI Corp., 245 F.3d 525, 527 (5th Cir. 2001). The plaintiff must also establish that the "unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." Johnson, 845 F.2d at 1354. "[T]he shipowner's actual or constructive knowledge of the unseaworthy condition is not essential to his liability.... What has evolved is a complete divorcement of unseaworthiness liability from concepts of negligence." Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 549–50 (1960). Trip hazards in walkways can render a vessel unseaworthy. See, e.g., Sousa v. M/V Caribia, 360 F. Supp. 971, 976 (D. Mass. 1973) (finding, in a case in which the plaintiff had tripped on a raised hatch cover lifting ring while carrying a carton of frozen fish, that the raised lifting ring had rendered the deck of the vessel's hold unfit for the purpose of discharging cargo); Jussila v. M/T Louisiana Brimstone, 691 F.2d 217, 218–20 (5th Cir. 1982) (holding, in a case in which the plaintiff had tripped on a metal rim protruding vertically from the deck of a vessel, that the plaintiff created a fact question as to unseaworthiness by presenting an expert who testified that the vessel owner had violated industry custom by not painting the metal rim with white or luminous paint). Captain Rivera has met his burden of proof. Kirby and the Tarpon's crew violated industry customs and standards and created an unsafe condition when they failed to mark or repair the hatch cover on which Captain Rivera broke his foot.

See also Costa v. Compagnie Generale Maritime et Financiere, 78 F.3d 592 (9th Cir.), cert. denied, 517 U.S. 1245 (1996) (issue of fact as to negligence created by defendant shipowner's failure to paint raised coaming "a contrasting color to the deck . . . ."); Enna v. Crescent Towing and Salvage, Co., No. 01-856, 2002 WL 1933725 at *4 (E.D. La. Aug. 19, 2002) ("[T]here remain material issues of fact as to whether sheer height of the coaming made the vessel unsafe and whether any negligence on the plaintiff's part contributed to the accident in question.").[6]

---

[6] In Kiger v. Doucet & Adams, Inc., No. 96-1915, 1998 WL 249221 (E.D. La. May 15, 1998), aff'd, 209 F.3d 719 (5th Cir. 2000), a seaman's trip and fall over a raised "lip" was dismissed, but importantly, and unlike the case at bar, the lip was painted yellow to distinguish it from the surrounding deck: "The lip which could be a tripping hazard was painted in the regulation yellow to signal danger. . . . Plaintiff also testified that the lip was painted yellow so that it would be more visible." Id. at *2.

> **D. Inspections by the United States Coast Guard and approval of the Ship's design by the American Bureau of Shipping do not prove that the subject doorway was seaworthy when Hinson was injured:**

It is anticipated that defendant will contend that inspections by the United States Coast Guard and approval by the American Bureau of Shipping ("ABS") demonstrate the vessel's seaworthiness. A Coast Guard Certificate of Inspection ("COI") serves only a limited purpose and does not vouch for the safety of all ship's equipment. Significantly, there is absolutely <u>no</u> proof in the record that the subject doorway was ever inspected or approved by either the Coast Guard or ABS.

Pursuant to 46 C.F.R. Subpart 2.01 ("Inspecting and Certificating of Vessels"), the Coast Guard is required to issue a COI to the Denebaola. 46 C.F.R. § 2.01-5(b) sets forth the contents of a COI:

> **§ 2.01-5 Certificate of inspection**
>
> \*          \*          \*
>
> (b) *Description of certificates.* The certificates of inspection issued to United States vessels describe the vessel, the route the vessel may travel, the minimum manning requirements, the safety equipment and appliances required to be on board, the total number of persons that may be carried, and the names of the owners and operators. The period of validity is stated on the certificate. The certificate may be renewed by applying for inspection under § 2.01-1.

46 C.F.R. § 2.01-5(b) (2014).

By definition, the COI does not attest to the seaworthiness of every vessel appurtenance, such as the coaming here. Similarly, approval by the American Bureau of Shipping does not attest to the seaworthiness of each and every vessel appurtenance. Rather, as explained by Hinson's expert Fisher,

> The US Coast Guard's COI does not attest to the Coast Guard's approval of many safety features of the ship. There is no Coast Guard regulation pertaining to the need for or the height of the involved coaming since it is entirely unrelated to exterior exposures.

-12-

> Accordingly, the Coast Guard's inspection associated with issuance of a COI for the Denebola is irrelevant to the involved coaming.
>
> The ABS classification of the ship attests to the fact that the vessel essentially complies with the ABS Rules for ocean--going ships. Those ABS rules have no requirement for the involved coaming. Thus, being in "class" is entirely irrelevant to the involved coaming on the Denebola.

Fisher Report at 9.

The extremely limited evidentiary value of Coast Guard inspections and ABS certification in a seaman's injury case was recognized in Kuithe v. Gulf Caribe Maritime, Inc., No. 08-0458, 2010 WL 3419998 (S.D. Ala. Aug. 26, 2010):

> In arguing that it was not negligent and that the ladder was not an unseaworthy condition, the defendant relies primarily on the following: (1) the opinion of its liability expert; (2) clean certificates of inspection from the Coast Guard; and (3) clean inspections by the American Bureau of Shipping ("ABS"). None of this evidence is impressive, and even in combination it does not alter the Court's finding that the defendant was negligent and that the ladder constituted an unseaworthy condition. While not exclusive, some of the deficiencies in the defendant's evidence are summarized below.
>
> Certificates of inspection "are of course evidence bearing on the question of due care, but they are not more." Sabine Towing Co. v. Brennan, 72 F.2d 490, 494 (5th Cir.1934). The Court accepts that the Coast Guard never cited the defendant in connection with the ladder and that the ABS never mentioned any problem with it. However, the Court finds that the Coast Guard and ABS did not specifically examine the ladder for fitness, either on its own or in the context of the awkward handholds and gross obstruction by the containment box. Accordingly, the absence of citation is not significant. Even had the Coast Guard or ABS consciously approved of the ladder and its environment, the Court would still find the ladder unsafe and an unseaworthy condition for reasons set forth above.

Kuithe, supra, 2010 WL 3419998, at *3; see also Murphy v. Overlakes Freight Corp., 177 F.2d 342, 344 (2d Cir. 1949), cert. denied, 339 U.S. 913 (1950) ("True, some three months before the ship employed Murphy, defendant had received a Coast Guard Annual Certificate of Inspection, made pursuant to 46 U.S.C.A. § 660a; but that certificate was not conclusive on the issue of fact as to the ship's condition" (footnote omitted)); Cassens v. St. Louis River Cruise

-13-

Lines, 44 F.3d 508, 515 (7th Cir. 1995) ("Similarly here the question is not whether the Coast Guard had discretion to not notice the missing handrail, but rather whether the inspector was required by statute or regulation to follow a specific course of action when inspecting the ship as a whole.  Except for the detailed instructions with respect to lifeboats and the like discussed above [lifesaving equipment, fire equipment, pressure vessels, hull equipment, etc.], he was not."); Sias v. Quality Eng'g Servs., No. 15-CV-2223, 2018 WL 4039394 at * 3 (W.D. La. Aug. 23, 2018) ("Such a certificate, while perhaps of some relevance, is not determinative of whether the employer has provided its employees with a reasonably safe place to work or whether a vessel is unseaworthy as that term is used in the context of this litigation."); Michel v. Jade Marine, Inc., No. 07-7543, 2008 WL 5382255 at *4 (E.D. La. Dec. 22, 2008) ("While a vessel may be unseaworth[y] *per se* if it fails to meet Coast Guard regulations, defendant does not cite any case stating that compliance with regulations precludes an unseaworthiness claim.").

Dated:     New York, New York
           October 17, 2018

                                            FRIEDMAN, JAMES & BUCHSBAUM LLP
                                            Attorneys for Plaintiff
                                    By:

                                                /s/ Andrew V. Buchsbaum
                                            Andrew V. Buchsbaum (AB-6475)
                                            132 Nassau Street, Suite 900
                                            New York, NY  10038
                                            (212) 233-9385
                                            abuchsbaum@friedmanjames.com


TO:    **By ECF**
       Court and all Counsel of Record